Charles Ray CHEEK, Plaintiff,

v.

WILLIAMS–McWILLIAMS COMPANY, INC., Defendant-Third Party Plaintiff-Appellant,

and

BUD'S BOAT RENTAL, INC., Defendant-Appellant-Appellee,

v.

SOUTHERN MARINE & AVIATION UNDERWRITERS, Third Party Defendants-Appellees.

No. 81–3219.

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1983.

John S. Hunter, Terrence C. Forstall, New Orleans, La., for Bud's.

John A. Jeansonne, Jr., Lafayette, La., for Williams-McWilliams Co.

Vivienne Monachino, James H. Roussel, New Orleans, La., for So. Marine & Underwriters.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

These are appeals from a multi-party admiralty suit brought by plaintiff Charles Ray Cheek against his employer, Williams-McWilliams Co. ("Williams"), for injuries sustained aboard a derrick barge operated by Williams. Williams joined Bud's Boat Rentals, Inc. ("Bud's") as third-party defendant, alleging that Cheek's injuries were aggravated by Bud's failure to comply with an agreement to provide vessel service to the Williams barge. When Bud's insurer, Certain Underwriters at Lloyd's ("Lloyd's"), disclaimed coverage under the protection and indemnity policy issued to Bud's, Bud's filed a cross-claim against Lloyd's seeking indemnity, costs, and attorneys' fees. The district court held that no negligence on the part of Bud's caused, contributed to, or aggravated Cheek's injury, and accordingly dismissed Williams' claim against Bud's. The court also dismissed Bud's claim against Lloyd's, holding that the claim against Bud's sounded solely in contract and therefore was not covered by the protection and indemnity policy. Because we agree with the district court that Bud's actions did not aggravate Cheek's injury, we affirm its findings with regard to Bud's liability. As to Lloyd's responsibility to reimburse Bud's for the costs of its defense, however, we reverse.

## I. FACTS AND PROCEEDINGS BELOW

### A. Facts

In July 1977 Williams owned and operated a derrick barge, the W–701, in the Gulf of Mexico off the Louisiana coast. Williams had an oral arrangement with Bud's whereby Bud's provided certain vehicle services to the Williams barge. The M/V MISS JOYCE, a crewboat owned and operated by Bud's, was used to transport personnel and supplies from the dock at Morgan City, Louisiana, to the W–701.

Early on the morning of July 29, 1977, the M/V MISS JOYCE left the Morgan City dock for the W–701. While en route, the vessel was stopped by the United States Coast Guard for a routine safety examination. The examination revealed that the operator of the M/V MISS JOYCE was not licensed to carry passengers for hire; accordingly, the Coast Guard officials ordered the crewboat to return to shore. Upon arriving at the Morgan City dock, the operator of the M/V MISS JOYCE advised the W–701 that the vessel would remain at the dock until a properly licensed captain arrived.

At approximately 1:30 p.m. on July 29, 1977, plaintiff Cheek was working aboard the W–701 when he suffered a puncture wound on the palm of his left hand. He received rudimentary first aid aboard the W–701 and returned to his cabin. Later, at approximately 2:30 p.m., he requested shoreside medical attention. Williams personnel aboard the W–701 arranged to have Cheek flown to shore via helicopter from a nearby drilling platform. Cheek ultimately received medical treatment in New Orleans later that same day.

## B. Proceedings Below

Cheek filed suit against Williams in the United States District Court for the Western District of Louisiana on July 29, 1979, charging his employer with negligence and with maintaining an unseaworthy vessel. Williams then filed a third-party claim against Bud's for contribution or indemnity. The third-party complaint alleged that Williams had leased a vessel from Bud's for use as a "standby" boat and that at the time of the accident the standby vessel was unavailable to transport Cheek to shore because of Bud's failure to keep the vessel in proper condition.

Bud's, which was insured under a protection and indemnity policy issued by Lloyd's, immediately notified Lloyd's agent, Southern Marine and Aviation Underwriters, Inc., of the claim. Bud's also requested defense and indemnity under the insurance policy. Lloyd's took the position that Williams' claim against Bud's was for breach of contract, and asserted that the protection and indemnity policy did not cover liability for such contractual claims. Dissatisfied with Lloyd's response, Bud's filed a cross-claim against Lloyd's seeking indemnity, costs, and attorneys' fees, as well as statutory penalties. Eventually Williams amended its third-party complaint to add Lloyd's as an additional third-party defendant based upon its policy insuring Bud's.

At this point in the proceedings Bud's moved for summary judgment on the question of coverage. Soon afterwards, Lloyd's moved to dismiss Williams' claim against it, contending that the claim by Williams against Bud's sounded solely in contract and that Bud's protection and indemnity policy excluded coverage for contractual claims. Judge W. Eugene Davis heard both motions. Judge Davis concluded that Williams' third-party complaint against Bud's stated a cause of action in negligence and that Bud's potential liability to Williams was encompassed by the coverage of its policy with Lloyd's. Accordingly, Judge Davis denied Lloyd's motion to dismiss. After taking Bud's motion for summary judgment under advisement, Judge Davis denied the motion as premature.[1]

When this action ultimately came to trial, Cheek's claim against Williams was tried to a jury, which entered a verdict in his favor. Williams' third-party claim against Bud's and Lloyd's was tried to the court, with Judge Richard J. Putnam, Jr., now presiding. At the conclusion of Williams' case, Bud's moved for involuntary dismissal of the third-party complaint on the grounds that no evidence existed to support a claim against Bud's. The court granted Bud's motion and accordingly dismissed Williams' claim against Bud's and Lloyd's. In so doing, the court specifically held that "no negligence on the part of Bud's Boat Rentals either caused, contributed to or aggravated the plaintiff's injury." Williams now appeals from this judgment.

In a separate ruling a few weeks later, Judge Putnam entered judgment on Bud's cross-claim against Lloyd's for reimbursement of costs, attorneys' fees, and statutory penalties. The court held that the claim asserted by Williams against Bud's was founded solely upon the contractual obligations between them. The court further found that Bud's policy with Lloyd's excluded contractual liability from its coverage; thus, the court held, Lloyd's was not obligated to reimburse Bud's for its costs of defense. Accordingly, the court dismissed Bud's cross-claim against Lloyd's. Bud's now appeals from this judgment.

## II. ISSUES ON APPEAL

Two sets of issues are presented in this case. Williams, appealing from the district court's dismissal of the third-party claims against Bud's and Lloyd's, argues that the district court erred in holding that no negligence of Bud's caused or contributed to Cheek's injury. Bud's, pursuing its own

---

1. Under Bud's protection and indemnity policy with Lloyd's, Lloyd's was not obligated to pay any amount until the insured had been cast in judgment. As Bud's had not been cast in judg- ment at the time the motion for summary judgment was made, the judge declined to rule on the coverage question.

appeal against Lloyd's, asserts that the district court's dismissal of its cross-claim against Lloyd's for expenses, costs, and attorneys' fees was erroneous, because its policy with Lloyd's included coverage for the claim brought by Williams against Bud's. We now turn to an appraisal of these issues.

## III. WILLIAMS' APPEAL AS TO BUD'S NEGLIGENCE

The district court dismissed Williams' third-party claim against Bud's and Lloyd's for contribution or indemnity, holding that no negligence on the part of Bud's caused, contributed to, or aggravated Cheek's injury. In challenging this holding, Williams first contends that this court should not be bound by the "clearly erroneous" standard of review. Instead, Williams claims, we should treat this issue as a mixed question of law and fact that is freely reviewable on appeal. Alternatively, Williams argues that the district court's factual findings are clearly erroneous even if examined under the familiar standard of Fed.R.Civ.P. 52. We do not agree.

■ The rule is well established that findings of fact in admiralty cases are binding unless clearly erroneous. *McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 7, 99 L.Ed. 20 (1954); *Signal Oil & Gas Co. v. Barge W–701,* 654 F.2d 1164, 1172 (5th Cir. 1981); *S.C. Loveland, Inc. v. East West Towing, Inc.,* 608 F.2d 160, 166 (5th Cir. 1979). Questions of negligence and proximate cause in admiralty cases are treated as fact questions. *Marcona Corp. v. Oil Screw SHIFTY III,* 615 F.2d 206, 208 (5th Cir.1980); *S.C. Loveland,* 608 F.2d at 166. In the face of this body of precedent, Williams' plea for a different standard of review is less than persuasive. Our appraisal of the district court's findings is to be guided by the light of Fed.R.Civ.P. 52, and those findings will not be reversed unless found to be clearly erroneous.

As noted earlier, on the morning of Cheek's accident the M/V MISS JOYCE had been stopped by the Coast Guard and ordered to return to the dock at Morgan City because the operator of the vessel was not licensed to carry passengers. When the accident occurred, therefore, the M/V MISS JOYCE was some thirty-eight to forty-five miles from the W–701 and was under instructions to remain at the dock until staffed by properly licensed personnel.

■ Although the M/V MISS JOYCE was unavailable for passenger transportation at the time of Cheek's accident, the district court found that no negligence on the part of Bud's caused, contributed to, or aggravated Cheek's injury. This finding is amply supported by the record. The evidence indicated that the Williams employees aboard the W–701 never called the M/V MISS JOYCE for aid in evacuating Cheek from the derrick barge. Instead, they began making arrangements for aircraft evacuation as soon as Cheek requested shoreside medical attention. According to expert testimony, helicopter evacuation is the appropriate method by which to evacuate an injured worker from an offshore vessel located some distance from shore. Thus, the evidence indicates that the M/V MISS JOYCE would not have been used to transport Cheek to shore for medical treatment even had the vessel been available.

An examination of the time sequences involved in the Cheek evacuation provides even stronger support for the district court's findings. A round trip from the Morgan City dock to the W–701 took the M/V MISS JOYCE an average of approximately five hours. Had Williams personnel called the M/V MISS JOYCE at 2:30 p.m. when Cheek first requested shoreside attention, Cheek would not have arrived at Morgan City until approximately 7:30 p.m. that evening. The actual evacuation by helicopter delivered Cheek to Morgan City at 6:50 p.m., approximately forty minutes before he could have arrived aboard the M/V MISS JOYCE. Thus, it can hardly be said that the unavailability of the M/V MISS JOYCE occasioned any delay in the treatment of Cheek's injury.

The evidence outlined above persuaded the district court that Bud's was not responsible for aggravating Cheek's injury in any

way. We agree. The district court's findings in this regard are not clearly erroneous and therefore are affirmed.

## IV. BUD'S APPEAL AS TO LLOYD'S DUTY OF REIMBURSEMENT

 Having resolved the questions presented by Williams' appeal as to Bud's liability, we now turn to the matters raised in Bud's appeal against Lloyd's. The district court dismissed Bud's cross-claim against Lloyd's for indemnity, costs, and attorneys' fees, construing Williams' claim against Bud's as a contractual claim not covered by the protection and indemnity policy under which Bud's was insured. On appeal, Bud's contends that the allegations of Williams' third-party complaint state a cause of action in tort, for which the protection and indemnity policy provides coverage. Accordingly, Bud's argues, Lloyd's is obligated to reimburse Bud's for the costs, expenses, and attorneys' fees related to its defense of the claim. We agree.

Bud's is insured under a protection and indemnity policy issued by Lloyd's through Lloyd's agent, Southern Marine and Aviation Underwriters, Inc. In the interest of completeness, we are impelled to impose the policy's verbiage upon the reader. It provides in part:

> The Assurer [Lloyd's] hereby undertakes to make good to the Assured [Bud's] or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities risks, events and/or happenings herein set forth:
>
> (1) Liability for loss of life of, or personal injury to, or illness of, any person, excluding, however, unless otherwise agreed by endorsement hereon, liability under any Compensation Act to any employee of the Assured, (other than a seaman) or in case of death to his beneficiaries or others.
>
> . . . .

> (12) Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.

In its statement of general conditions and limitations, the policy contains the following contractual exclusion clause: "Unless otherwise agreed by endorsement to this policy liability hereunder shall in no event exceed that which would be imposed on the Assured by law in the absence of contract." Endorsement # 4 appended to the insurance contract includes the following extension of contractual liability:

> In consideration of the premium for which this insurance is written, the coverage afforded under this policy is extended to insure the liability of the Assured arising out of hold harmless and/or indemnity agreements contained in such contracts as may be entered into by the Assured for the furnishing of vessel services. Each such contract shall be subject to Underwriters prior approval.

The insurance coverage also encompasses liability "for the excess where the amount deductible under this policy is exceeded by (A) the cost of investigating and/or successfully defending any claim or suit against the Assured based on a liability or an alleged liability of the Assured covered by this insurance." Finally, the policy provides that "no liability attaches to the Assurer [f]or any loss, damage, or expense arising from the cancellation or breach of any charter."

The parties agree that the protection and indemnity policy does not require Lloyd's to undertake Bud's defense; instead, Bud's claim against Lloyd's prays for reimbursement of the costs, expenses, and attorneys' fees expended in its successful defense of Williams' claim. Lloyd's ultimate exposure for these defense costs is contingent upon a finding that the liability defended against by Bud's was one that would have been covered by the policy had the court held for Williams. Thus, in order to determine

whether Lloyd's is liable to Bud's, we must ascertain the nature of Bud's potential liability to Williams and determine whether that liability would be covered by the protection and indemnity policy.

### A. Scope of the Policy Coverage

The parties' dispute regarding the scope of the coverage afforded by the protection and indemnity policy focuses on the language of the contractual exclusion clause: "Unless otherwise agreed by endorsement to this policy liability hereunder shall in no event exceed that which would be imposed on the Assured by law in the absence of contract." Lloyd's reads this exclusion to limit the policy's coverage to that liability imposed on the assured by virtue of general negligence principles in the absence of any contractual arrangements. Bud's contends that the contractual exclusion clause excludes coverage only for liabilities assumed by the assured in an agreement to indemnify a third party. Both parties acknowledge that the policy does not contemplate coverage for breach of a charter agreement.

The plain language of the clause, taken alone, appears at first blush to support Lloyd's position. Lloyd's argues that, even if Williams' allegations are assumed to state a cause of action in negligence, the breach of duty giving rise to the negligence is breach of a duty that springs from the contract between Bud's and Williams. Without the contract between Bud's and Williams, Lloyd's asserts, Bud's had no duty to provide transportation from the W–107 to shore; consequently, without the contract between Bud's and Williams, no negligence liability could have arisen and no coverage would have been called for under the policy.

We do not read the contractual exclusion clause in a vacuum, however. Bud's points to Endorsement # 4 of the policy, quoted above, as evidence that the thrust of the contractual exclusion clause was to exclude liability for the assumption of third party liability by Bud's, such as through an indemnification agreement. We too consider the presence of Endorsement # 4 an indi-cation that the initial exclusion of contractual liability contemplated only the contractual assumption of the liability of third parties by Bud's. Endorsement # 4 memorializes Bud's purchase of coverage for all contractual assumptions of third party liabilities; additional consideration and language were necessary because such coverage was eliminated by virtue of the original exclusion. The appearance of this endorsement in the policy, limited as it is to liability arising out of hold harmless and indemnity agreements, suggests to us that the original exclusion of all liability not "imposed on the Assured by law in the absence of contract" was intended by the parties to exclude only contractual assumptions of liability.

Policy considerations also militate in favor of Bud's position. The basic thrust of coverage under the policy is to protect and indemnify Bud's for its liability for any negligence occurring in the operation of its vessels. It would be a strained and technical construction of this policy to hold that an allegation of tort liability was not within the scope of its coverage merely because the alleged tort was related in some way to a contract. We do not believe that a cause of action based on allegations of negligence that may have been peripherally related to a contract is the sort of liability the clause at issue was designed to exclude.

Lloyd's duty to reimburse Bud's for the costs of its defense arises if Bud's potential liability to Williams would have been covered by the policy. We interpret the contractual exclusion clause as excluding coverage only for liabilities of third parties assumed by Bud's through the medium of a contract, such as a hold harmless or indemnity agreement. Both parties agree that no such indemnity agreement is present in this case. Thus, the characterization of Bud's potential liability to Williams becomes the determinative issue in this proceeding, and we turn to our examination of that question.

### B. Nature of Bud's Liability to Williams

Lloyd's responsibility for reimbursement of Bud's defense costs arises only if the

liability asserted against Bud's would have been covered by the policy had the court held in Williams' favor. Based upon our interpretation of the contractual exclusion clause, we read the protection and indemnity policy as covering a negligence claim asserted against Bud's. Therefore, if Bud's potential liability to Williams was grounded in negligence, Lloyd's will be required to reimburse Bud's for the costs of its defense.

Careful analysis of Williams' claim against Bud's is critical to a characterization of Bud's potential liability to Williams. Again completeness demands that we quote at length from the record. Williams' initial third-party complaint against Bud's alleged the following:

> At the time of the plaintiff's accident, the crewboat "Miss Joyce" was leased by third party defendant [Bud's] to third party plaintiff [Williams], for use as a "standby" boat, alongside the [W–701].
>
> On information and belief, however, it is alleged that, at the time of the plaintiff's accident, the "Miss Joyce" was not available to third party plaintiff as a "standby" boat, since the use of the "Miss Joyce" for that purpose had been terminated by the United States Coast Guard for unsafe operating conditions.
>
> Therefore, in the event that this Court should find, at the time at which the principal demand is tried, that the [W–701] is unseaworthy, or that Williams-McWilliams Company, Inc. was negligent, and in the event that the Court further finds that this unseaworthiness or negligence constituted a proximate cause of the injuries to the plaintiff in the principal demand, *third party plaintiff is entitled to indemnity, or in the alternative, to contribution, from third party defendant for the failure of third party defendant to keep the "Miss Joyce" in condition as a proper standby vessel.*

Record on Appeal, Vol. I, at 38–39 (emphasis added). Williams later filed a supplemental and amending third-party complaint naming Lloyd's as a direct defendant. In its memorandum in support of the amended complaint, Williams again claimed entitlement for contribution or indemnity from Bud's "by virtue of the unseaworthiness of the crewboat 'MISS JOYCE.'" Record on Appeal, Vol. I, at 47.

Other documents in the record further elucidate the nature of Williams' claim against Bud's. When Bud's filed a motion for summary judgment against Lloyd's on the issue of coverage, Williams filed a memorandum in support of Bud's motion outlining the two bases for its third-party complaint.

> [Williams] seeks recovery from Bud's for two reasons: First, because of Bud's failure to honor its contractural [sic] obligation to have a properly-licensed master aboard its standby vessel, Williams-McWilliams may be damaged; and second, the same default, by Bud's, constitutes negligence, for which Williams-McWilliams is entitled to complete indemnity.
>
> Under either theory, the *contract* between Williams-McWilliams and Bud's establishes the standard of care by which Bud's performance must be measured. Bud's tortious breach of the duty thus established, however, is the proximate cause of any damage which Williams-McWilliams may sustain in these proceedings.

Record on Appeal, Vol. I, at 194 (emphasis in original). Finally, Williams listed the following contested issues of fact in the pre-trial stipulation and order:

4. Whether the crewboat "MISS JOYCE" was negligent, unseaworthy or both, and whether the fault of this vessel caused or contributed to the accident;

5. Whether Bud's Boat Rental, Inc. breached its contractual obligation to Williams-McWilliams Co., Inc. to provide a "standby" boat for the derrick barge on which the accident occurred.

■ The district court found that Williams' claim was founded solely upon the breach of the contractual obligation between Bud's and Williams; accordingly, the court held that Lloyd's had no duty to reimburse Bud's for the costs of its defense. Our own review of the record, however,

convinces us that the court's construction of the pleadings was in error. To us, Williams' pleadings and memoranda clearly narrate a cause of action in negligence against Bud's that would have been covered by Bud's policy with Lloyd's had Williams prevailed at trial. Throughout Williams' pleadings runs the theme that Bud's negligence in performing its agreement with Williams resulted in a breach of that agreement. It is hornbook law that negligent performance of a contract may give rise to a claim sounding in tort as well as a claim for breach of contract. *See Ajax Hardware Manufacturing Corp. v. Industrial Plaints Corp.*, 569 F.2d 181, 185 (2d Cir.1977); *United States v. Lawter*, 219 F.2d 559, 562 (5th Cir.1955); Restatement (Second) of Torts § 323 (1965); W. Prosser, *Handbook of the Law of Torts* § 92 (6th Ed.). Even the district court implicitly recognized the negligence basis of Williams' claim against Bud's when it held that "no negligence" on the part of Bud's caused, contributed to, or aggravated Cheek's injury. Our review of the record, and in particular our assessment of the nature of Williams' claim against Bud's, persuades us that Bud's potential liability to Williams was negligence-based.

Under the terms of the policy, Lloyd's was required to reimburse Bud's for costs related to the successful defense of any claim based on an alleged liability covered by the insurance. Because we read the claim against Bud's as a negligence claim covered by the policy, we hold that Lloyd's is liable to Bud's for the costs of Bud's defense of the claim against Williams. The district court's conclusions to the contrary are reversed.[2]

### C. Necessity for Remand

For the reasons stated above, we hold that Bud's cross-claim against Lloyd's for its costs, expenses, and attorneys' fees should have been granted. Due to the procedural posture of the case, no evidence was introduced at trial to prove the total cost of Bud's defense.[3] Accordingly, a remand is necessary to determine the extent of Lloyd's liability for reimbursement.

Bud's also argues that it is entitled to statutory penalties under La.Rev.Stat.Ann. § 22:658 (West 1978) for Lloyd's allegedly arbitrary and capricious failure to pay Bud's claim. As with the question of the cost of Bud's defense, no evidence was presented below that would support an award of statutory penalties as a matter of law. Without in any way expressing an opinion on this matter, we also remand to the district court the question whether statutory penalties against Lloyd's would be appropriate in this case.

### V. CONCLUSION

While other arguments have been presented in the briefs, we have examined them and found them to be without merit. Accordingly, we hold that:

(1) As to Williams' appeal with regard to Bud's liability for contributing to Cheek's injury, the district court is AFFIRMED;

(2) As to Bud's appeal with regard to Lloyd's duty to reimburse Bud's for the costs of defense, the district court is REVERSED and the cause is REMANDED for a determination of the costs, expenses, attorneys' fees, and statutory penalties, if any, that may be warranted.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

2. Even if we assume that Williams stated a separate claim against Bud's for breach of contract, the result is the same. Where an insured's liability rests on one of two theories and only one of them brings the liability within the policy coverage, the insured has the right to insurance protection. 7A J. Appleman, *Insurance Law and Practice* § 4497.02, at 135 (Berdal ed. 1979).

3. Counsel for Bud's and Lloyd's agreed to submit Bud's cross-claim against Lloyd's on the briefs alone, and to proceed with proof of costs thereafter if necessary. Because the district court dismissed the cross-claim, Bud's never presented any evidence as to the costs accumulated in pursuing its defense of Williams' claim.