Charles Robert CURRY,
Plaintiff-Appellee,

v.

FLUOR DRILLING SERVICES, INC.,
Defendant-Appellant.

No. 82-3109.

United States Court of Appeals,
Fifth Circuit.

Sept. 26, 1983.

Hebert & Abbott, Lawrence E. Abbott, Brad G. Theard, Scott E. Delacroix, New Orleans, La., for defendant-appellant.

Neblett, Weeks & Neblett, B. Gerald Weeks, Alexandria, La., for plaintiff-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge:

Plaintiff-appellee, Charles Robert Curry, filed suit against defendant-appellant, Fluor Drilling Services, Inc., and Hartford Accident and Indemnity Company pursuant to 46 U.S.C. § 688, commonly known as the Jones Act, and the General Maritime Law, seeking recovery for injuries he sustained on or about December 22, 1979, while employed aboard Drilling Rig MR GUS II. Prior to the trial of this matter, a summary judgment was granted in favor of Hartford Accident and Indemnity Company dismissing it from the litigation. After a bench trial, the district court rendered judgment for Curry and against Fluor Drilling and awarded Curry $35,203.66 in damages.

On the day of the injury, Curry and other roustabouts were assigned the task of shoveling drill cuttings from the shale shakers into fifty-five gallon drums. Normally, drill cuttings are pumped into the Gulf. This task was necessary, however, because the drill cuttings were coated with a greasy oil based substance known as "Black Magic,"[1] and its discharge into the Gulf would result in pollution.

Curry and a co-worker, Taff, were working side by side on a gate walkway. The drill cuttings would flow toward the two men and into troughs situated in front of them. Taff would shovel the cuttings from his trough into Curry's trough, who would then shovel them into an upright drum. Curry, therefore, was receiving more than a normal load of drill cuttings.

The accident occurred when the cuttings began to overflow from Curry's trough and accumulate around his feet. As he was trying to deal with the overflow, he slipped in the greasy mixture, fell backwards, and hit his back against a railing located behind him.

Curry continued working for about fifteen or twenty minutes. He then reported

---

1. "Black Magic" is an oil based drilling fluid that is only used to free a stuck drill string. Although not unknown, this is not a frequent occurrence. Curry, who had been only on the job for four months, had not been exposed to "Black Magic" before the day of the accident.

the accident to his immediate supervisor and filled out an accident report. The injury was treated by several doctors and was diagnosed as an acute lumbar strain, aggravated by an emotional overlay. Curry has effected a complete recovery.

Several issues are raised on appeal. First, Fluor Drilling argues that the district court's findings of negligence, proximate cause and unseaworthiness were clearly erroneous. Fluor Drilling's assertions are in essence an attack on Curry's credibility; Fluor Drilling maintains that Curry was the only witness to the accident and that his self-serving testimony should not have been accepted by the trial court.

In an admiralty case, the district court's findings of negligence and unseaworthiness will not be set aside absent a determination that the court's findings were clearly erroneous. *Cheek v. Williams-McWilliams Co., Inc.,* 697 F.2d 649, 652 (5th Cir.1983). Where the conclusions of the trial judge may reasonably be inferred from the record as a whole, those conclusions will be upheld on appeal even though the record contains evidence to the contrary. *Solomon v. Warren,* 540 F.2d 777, 784 (5th Cir.1976), *cert. denied,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977). Here the trial court's findings were clearly supported by the record. The plaintiff was the only witness to the facts surrounding the accident. There was very little evidence to either corroborate or contradict Curry's testimony. The district court's decision to accept Curry's story as true was well within the court's discretion. Believing Curry's testimony that "Black Magic" had built up on the walkway, making it slippery, the court's findings of negligence, proximate cause and unseaworthiness were not clearly erroneous. *See Davis v. Hill Engineering, Inc.,* 549 F.2d 314 (5th Cir.1977).

Second, Fluor Drilling argues that the district court erred in ruling that Curry was not contributorily negligent. Applying the same standard set forth above, we find this contention to be without merit. Curry was performing work as ordered by his supervisor and was doing so in a reasonable manner, while trying to combat the increasing quantity of drill cuttings being poured into his trough. The district court, therefore, did not err.

Next, Fluor Drilling presents several contentions relating to the award of damages. First, Fluor Drilling asserts that the trial court's award of $20,000 for pain and suffering was excessive. The evidence showed Curry suffered from his back injury for over ten months. In *Gloria Steamship Company v. Smith,* 376 F.2d 46 (5th Cir. 1967), a $10,800 award for pain and suffering for a back injury lasting just over one year was upheld. Considering inflation, if an award of $10,800 in 1967 was not excessive, certainly an award of $20,000 in 1981 is not excessive. The district court, therefore, did not abuse its discretion by awarding $20,000 for pain and suffering.

Second, Fluor Drilling claims that the district court erred in calculating Curry's lost wages. It contends that the trial court awarded lost wages for 21 pay periods when in actuality Curry had been paid in full for both the shift in which he was injured and the subsequent shift in which he returned to work and aggravated his condition; Curry, therefore, should only have been awarded lost wages for 19 pay periods. Curry maintains, on the other hand, that the trial court did take into account Fluor Drilling's payment for the partial shifts which he worked and correctly awarded pay for 21 lost periods. After examining the record, we conclude that Curry's assertion is correct; and, therefore, we find no error.

Third, Fluor Drilling argues that the court erred in finding Curry's lost wages were $610.40 per pay period. Evidence was presented that Curry was making $5.24 per hour or $610.40 per pay period. Fluor Drilling failed to present evidence showing a lesser award of lost wages was warranted. The district court, therefore, did not err.

Fourth, Fluor Drilling contests the trial court's award of $15.00 per day for maintenance. Fluor Drilling asserts that since the evidence showed Curry was living with his

parents while he was out of work Curry failed to make a prima facie case for maintenance.

Fluor Drilling voluntarily paid Curry maintenance of $8.00 per day from the date of the alleged injury through October 21, 1980, when he was released to return to work. The issue before us does not involve this payment. Fluor Drilling is not seeking the return of these payments, and these payments do not constitute an admission that Curry is entitled to maintenance. The issue before us is whether there is evidence in the record to support the district court's award of maintenance.

A maintenance award will be upheld as long as there is an evidentiary basis for the district court's finding. *Thezan v. Maritime Overseas Corporation*, 708 F.2d 175, 182 (5th Cir.1983). A seaman makes out a prima facie case on maintenance when he proves "the actual living expenditures which he found necessary to incur during his convalescence." *Thomas v. Secretary of Health and Human Services*, 659 F.2d 8, 14 (1st Cir.1981). The seaman's own testimony as to the reasonable cost of room and board in the community where he is living is adequate to support an award of maintenance. *Morel v. Sabine Towing & Transportation Co., Inc.*, 669 F.2d 345, 347 (5th Cir.1982). Some proof of the seaman's expenses or liability incurred is necessary, however, for the plaintiff to sustain its burden of establishing a prima facie case. M. Norris, *The Law of Seamen* § 558 (3d ed. 1970). In this case, there was no evidentiary base for the court's award of maintenance; the record was totally void of any evidence showing Curry's expenditures or

the reasonable cost of subsistence in his community.[2] The finding of the district court, therefore, was clearly erroneous.

Fifth, Fluor Drilling contends that the district court abused its discretion in awarding prejudgment interest. In an admiralty case, the award of prejudgment interest is committed to the sound discretion of the trial court. *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 988 (5th Cir.1978). In fact, generally in maritime law, prejudgment interest should be awarded. *Musial v. A & A Boats, Inc.*, 696 F.2d 1149, 1154 (5th Cir.1983). After reviewing the facts of this case, we find no abuse of discretion on the part of the trial court in awarding prejudgment interest.

In conclusion, the district court's award of maintenance is reversed, and in all other respects the district court is affirmed.

AFFIRMED IN PART; REVERSED IN PART.

TATE, Circuit Judge, specially concurring:

I concur in all aspects of the majority opinion, with this exception: I have reservations about our disallowance on appeal of maintenance beyond eight dollars per day, at least without a remand. However, I ultimately concur, on my understanding of the limited holding of the majority.

As the memorandum opinion of the district court and the plaintiff Curry's post-trial brief show, the Western District of Louisiana has a jurisprudential rule by which, in the absence of contrary proof, fifteen dollars per day is presumed to be an equitable rate of maintenance.[1] The district court

---

2. At oral argument, Mr. Curry's attorney stated that there was testimony in the record indicating that Mr. Curry bought groceries for his mother and dad; that Mrs. Curry (Mr. Curry's mother) testified to the fact that he would volunteer and say, "Mom, look, I am staying here. It is the least I could do"; and that he would go out and buy groceries to repay his parents. After a thorough examination of the record, we find no such testimony.

The only testimony resembling that alleged by counsel was to the effect that on occasion Curry would go to the Seven Eleven and get a loaf of bread for his mother.

1. The defendant's post-trial brief did not expressly argue against the existence of the rule, but, rather, relied upon the many decisions which (under prior jurisprudential rules of a similar nature) had awarded $8.00 per day maintenance.

relied upon this jurisprudential presumption, in the absence of a showing by the defendant that the daily rate of maintenance should be lower.

I do not understand the majority opinion to disallow use by a district court of such a presumption created by its own jurisprudential rule and enunciated by its own decisional law, as known by all parties prior to trial. Rather, I understand the majority as holding that in the present case the presumption was rebutted by the uncontradicted testimony elicited from the plaintiff and his parents that showed that, in fact, he lived with them during the period for which maintenance and cure is sought.

Under these circumstances, and especially since the defendant did not contest the right of the plaintiff to receive the eight dollars per day maintenance actually paid him during the period for which maintenance was due, the majority felt that the plaintiff had not borne his burden of proving that he was entitled to the additional seven dollars per day awarded by the district court merely on the basis of the jurisprudential presumption, which the majority felt had been dispelled by the evidence that the plaintiff lived at home without undue personal living expenses.

With this understanding of the limited holding by the majority, I concur in its reversal of the maintenance award in excess of eight dollars per day.

