Jimmy YELVERTON,
Plaintiff-Appellant,

v.

MOBILE LABORATORIES, INC.,
Defendant-Appellee.

No. 85-4401
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1986.

---

Domengeaux & Wright, Charles W. Dittmer, Jr., J. Larry Walters, New Orleans, La., for plaintiff-appellant.

Aultman & Aultman, Dorrance Aultman, Thomas W. Tyner, Hattiesburg, Miss., for defendant-appellee.

Before: RUBIN, REAVLEY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Jimmy Yelverton appeals from the entry of an adverse judgment following a bench trial on three of his four claims against Mobile Laboratories, Inc. (Mobile). We affirm.

## I.

Yelverton was employed by Mobile as a radiographic technician.[1] On August 16, 1977, Yelverton drove from his home in Laurel, Mississippi, to Mobile's place of business in Harvey, Louisiana. Yelverton's work schedule called for him to arrive at Mobile's yard in Harvey at 3:30 a.m. where he was to pick up radiographic equipment. Following the pick-up he was supposed to travel to Venice, Louisiana, to meet a crew boat.

Yelverton arrived at the yard in Harvey five hours late. He maintains that he advised Mobile's dispatcher, Fred Hogue, that he was experiencing brake troubles. Hogue, however, remembers only that Yelverton was experiencing mechanical difficulties and cannot recall that Yelverton complained specifically about his brakes. Yelverton requested a company car but none was available. Told by Hogue that if he did not proceed immediately to Venice his job would be in jeopardy, Yelverton went on in his own car.[2] While traveling on Highway 23, a two lane highway, he was struck by another automobile skidding diagonally across the road.

Yelverton sued Mobile, alleging a right to recover under the Jones Act, 46 U.S.C. § 688, and general maritime law for his personal injuries suffered in the accident. Yelverton maintains that when he saw the skidding car advancing towards him he applied his brakes and they failed. He argues the failure of his brakes caused him to collide more forcefully with the oncoming vehicle and, therefore, that Mobile's negligent disregard for the condition of his brakes was the producing cause for some part of his injuries.

The district court, 608 F.Supp. 400, found that Mobile was not negligent but that Yelverton was a "seaman" and was hence eligible to recover for maintenance and cure notwithstanding the absence of fault

---

1. Yelverton's primary duty was to conduct radiographic examinations of welds on under-water pipelines located in the East Bay off the coast of Louisiana.

2. Use of personal vehicles on company business was a common practice at Mobile. Employees were reimbursed for their mileage.

of his employer. The court awarded $3,500 for estimated future medical expenses but ultimately denied maintenance because Yelverton failed to prove the cost of his food and lodging. Finding that Mobile did not capriciously and arbitrarily withhold maintenance and cure, the court also denied punitive damages and attorney's fees. Yelverton maintains that the district court erred in refusing to award damages for negligence, maintenance, punitive damages, and attorney's fees.

## II.

### A. *Negligence.*

██ The district court noted in its opinion that the evidence relating to Mobile's awareness of Yelverton's brake problem was in conflict. It stated that in its view,

> [i]t is more plausible ... that Yelverton told Fred Hogue about general car problems only in an effort to explain his extreme tardiness in reporting for work that day. When Yelverton arrived in Harvey, Louisiana, the site of the defendant's offices, he was already some five hours late, a fact that obviously irritated Fred Hogue ... and one that delayed the barge crew from departing from Venice. Thus, we do not accept Yelverton's testimony that he expressly told Fred Hogue about his brakes. His concerns at the time were to explain his lateness and 'to get down to Venice.' While Yelverton may have requested a truck, he did not preface it by apprising the defendant of an *unsafe* condition on his car.

In support of his argument that the trial court's interpretation is erroneous, Yelverton points to Hogue's deposition testimony in which Hogue admitted that he had earlier made a statement to Yelverton's attorney that he could not tell "one way or another whether Jimmy told [him] something was wrong with his brakes because so much time has elapsed...."

Hogue's statement to Yelverton's attorney is somewhat more favorable to Yelverton than Hogue's later statements taken at deposition. When confronted with this prior statement at deposition, Hogue replied:

> I am saying that [Yelverton] did not that I remember tell me anything about the brakes. Okay. Now whether it's because of the time lapse or not is something I don't ... I would remember. I would have remembered it if he had told me something like that I feel sure of that. I feel sure of that.... he could have said that to me, but I did not hear it and I do not recollect it at all.... I remember the conversation and several details about it but I do not remember anything about the brakes.

Yelverton's position appears to be that because the earlier statement (that he could not recall whether or not Yelverton mentioned a problem with brakes) was rendered when Hogue's recollections would normally have been fresher, it is presumptively more credible than Hogue's later, less ambiguous testimony (that he had no recollection of a discussion regarding brakes and that he believes he would have such recollection had the discussion actually taken place). He further argues that because the prior statement is consistent with Yelvertons' account, Yelverton's version must be accepted as true. We disagree.

In reviewing a judgment of a trial court, sitting without a jury in admiralty, this court may not reverse the judgment below unless it is "clearly erroneous." *Pacific Employers Insurance Co. v. M/V Gloria,* 767 F.2d 229, 235 (5th Cir.1985) (citing *McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 7, 99 L.Ed. 20 (1954); *Daniels Towing Service, Inc. v. Nat Harrison Associates,* 432 F.2d 103, 105 (5th Cir. 1970)).

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949). We find that the district court's

decision to give credence to the later testimony, delivered in relatively neutral territory with both counsel present, rather than to the earlier statement rendered to Yelverton's counsel in his own offices is a "permissible view of the evidence" and therefore is not subject to reversal.[3]

### B. *Maintenance.*

Yelverton admits that he produced no evidence concerning the value of his food and lodging. He claims that notwithstanding this absence of proof he is entitled to the "going-rate" of fifteen dollars a day.

 Our exhaustive research of the case law in this circuit has revealed no case which has awarded a "going-rate" of maintenance to a plaintiff who has failed to submit evidence of his costs. A seaman's burden of production in establishing the value of his maintenance is feather light: his own testimony as to reasonable cost of room and board in the community where he is living is sufficient to support an award. *Curry v. Fluor Drilling Services, Inc.,* 715 F.2d 893 (5th Cir.1983). Because the evidence before the court often consists solely of the seaman's testimony, it is common for courts to award a standard *per diem. See, e.g., Gauthier v. Crosby Marine Service, Inc.,* 499 F.Supp. 295 (D.C.La.1980) (fifteen dollars a day); *Robinson v. Plimsoll Marine, Inc.,* 460 F.Supp. 949 (E.D.La.1978) (fifteen dollars a day). Standardized rates of maintenance, however, do not dispense with the requirement that a plaintiff-seaman provide the trier of fact with an evidentiary basis upon which to determine a justifiable amount. *See Springborn v. American Commercial Barge Lines, Inc.,* 767 F.2d 89, 95 (5th Cir.1985); *Harper v. Zapata Offshore Co.,* 741 F.2d 87, 91 (5th Cir.1984); *Curry v. Fluor,* 715 F.2d 893, 896 (5th Cir.1983); *Thezan v. Maritime Overseas Corp.,* 708 F.2d 175, 182 (5th Cir.1983), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984); *Tate v. American Tugs, Inc.,* 634 F.2d 869, 870 (5th Cir.1981); *Caulfield v. AC & D Marine, Inc.,* 633 F.2d 1129, 1132 (5th Cir. 1981).

The record being devoid of any evidence upon which to base an award of maintenance, the district court's denial of maintenance was not erroneous.

### C. *Punitive Damages and Attorney's Fees.*

 A shipowner who arbitrarily and capriciously denies maintenance and cure to an injured seaman is liable to him for punitive damages and attorney's fees. *Harper v. Zapata Offshore Co.,* 741 F.2d 87 (5th Cir.1984); *Holmes v. J. Ray McDermott & Co.,* 734 F.2d 1110, 1118 (5th Cir. 1984). Because Yelverton is not entitled to an award of maintenance, we must find that Mobile has breached no duty in failing to provide such support.[4] With respect to Mobile's duty to provide cure, we discern no wrongful conduct which could possibly justify an award of punitive damages. The district court found that Mobile paid all of Yelverton's reimbursable medical expenses except three undocumented bills. This finding is not contested by Yelverton on appeal. Far from being arbitrary and capricious, we believe that Mobile's treatment of Yelverton has been exemplary. We find no error in the district court's denial of punitive damages and attorneys fees.

For the foregoing reasons the judgment of the district court is AFFIRMED.

---

3. We also note that even if the district court had had only Hogue's earlier statement to Yelverton's counsel before it, it would have been entirely free to disbelieve Yelverton's uncorroborated version of the facts. *In re Westec Corp. v. Carpenter,* 434 F.2d 195, 202 (5th Cir.1970).

4. Readers of this opinion may think it unfair that a technical stumbling block, created by Mobile's failure to pay maintenance voluntarily, has effectively immunized Mobile from liability. We note, without implying that the outcome would differ under dissimilar facts, that Mobile settled a state workmen's compensation claim with Yelverton and therefore actually provided support during his convalescence.