# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 3, 2010

No. 10-30068
Summary Calendar

Lyle W. Cayce
Clerk

RAYMOND SALIS,

Plaintiff–Appellant,

v.

L&M BOTRUC RENTAL, INC.,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-cv-02811

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Raymond Salis (Salis), a seaman formerly employed by L&M Botruc Rental, Inc. (L&M), filed suit against L&M asserting claims for personal injury compensation under the Jones Act as well as maintenance and cure. The United States District Court for the Eastern District of Louisiana granted summary judgment in favor of L&M. Salis now appeals to this court. Finding no genuine issue as to any material fact, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30068

**I**

L&M employed Salis as a deckhand aboard the ship M/V Botruc 19 (M/V Botruc). During the course of his employment, Salis twice complained about neck and back pain. The first asserted injury occurred in March 2008, while Salis restocked the water in the M/V Botruc's galley. The M/V Botruc's crew restocked this galley as a component of their duties. This involved moving six one-gallon jugs of water, held in boxes, from the cooler to the galley. Crew members entered the galley through a hatch, the base of which sat raised above the floor. The apex of the hatch was approximately five feet higher. Salis stated that he moved water into the galley and, in so doing, injured himself. Although at times two crew members would work together to move the water—thus avoiding the need for an individual to duck through the hatch while carrying the water—Salis was acting alone at the time of injury. He was placed on modified duty after notifying L&M, and sought treatment at the Patients First Clinic upon returning to shore. The medical records included a diagnosis of a strain, and stated that the strain "is resolving spontaneously without much intervention."

Salis then returned to active service. He states that he aggravated the injury in July 2008, while transporting boxes of groceries from shore. The groceries were loaded by hand, though Salis asserts that a crane was available at the facility and that there were previous occasions on which the crane had been used for that purpose. The ship's captain, when deposed, stated that he could not recall any other crewman being injured in such a manner. As to both incidents, Salis admits that he was not specifically ordered as to the manner in which to move the goods.

After the July 2008 injury, L&M sent Salis for evaluation upon returning to port. Salis left town without evaluation, and instead returned home where he sought treatment at Patients First. At Patients First, however, Salis refused to

No. 10-30068

retake a Coast Guard drug test, a prerequisite to the appointment. A previous test had been overly diluted, and despite being told that refusal to take a test was tantamount to a failed test, Salis left without treatment.

Salis instead sought treatment from Dr. Carr, beginning on August 8, 2008. Parties have submitted treatment records from four medical evaluations by Carr. In the first appointment, Carr diagnosed Salis with a spinal injury, and noting his improving health, recommended continuing "conservatively." She directed Salis to physical therapy and wrote that upon the therapy's conclusion, and Salis presenting as "symptom free," he would be cleared for "full duty." Carr also scheduled a follow-up appointment, noting that Salis could be a candidate for surgical cervical disk replacement if the conservative treatment failed. At that follow-up, on September 19, 2008, Carr observed improvement. Salis was scheduled for another follow-up appointment, and Carr noted that surgery remained possible if the conservative therapy failed. Additionally, Carr cleared Salis for a return to work with "zero" restrictions. Also in the record is a letter from Salis' physical therapist, noting that on Salis' visit of September 18, 2008, Salis reported a "100% functional improvement and 0/10 pain on the visual analog scale."

Salis then returned to work on September 26, 2008. Subsequently, on November 5, 2008, the Coast Guard suspended his license for failure to take a drug test. Lacking a Merchant Marine License, Salis could not work as a deckhand with L&M. Instead, since that time he has worked at his father's restaurant. Salis responded affirmatively in his deposition when asked if he would still be with L&M if not for the suspension of his license.

One day before the Coast Guard suspended his license, Salis saw Carr. He complained about renewed pain since he began working again. Carr advised Salis of the risks of surgery, ranging from "worsening pain" to "coma, death, [or] paralysis." Salis indicated that he "wishe[d] to think about the options." At a

3

No. 10-30068

follow-up appointment in February 2009, Salis again indicated that he wished to think about the options before committing to such a surgery.  Salis stated in his deposition that he has not seen a doctor for care stemming from this injury since that time.

The district court held that L&M was entitled to summary judgment on both the Jones Act negligence and maintenance and cure claims.  It found no genuine issues of material fact with respect to the negligence claim, observing that Salis lacked evidence establishing a right to such recovery.  It also held that L&M's maintenance and cure obligations were terminated by Salis' pain-free return to work, and that his current absence was due to his lack of a license. The court noted, however, that should Salis undergo surgery, he might, at that time, have a renewed claim for maintenance and cure.  Salis now appeals to this court.

## II

Salis appeals from a final summary judgment rendered by the district court.  Thus, jurisdiction over the appeal is properly vested in this court.[1]  This court reviews a district court's grant of summary judgment de novo, pursuant to the same standards as the lower court.[2]  Summary judgment is appropriate when "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"[3]  A genuine issue of

---

[1] 28 U.S.C. § 1291.

[2] *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009) (citing *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 859-60 (5th Cir. 2004)).

[3] *Id.* (quoting FED. R. CIV. P. 56(c)(2)).

No. 10-30068

material fact exists when "'a reasonable jury could return a verdict for the non-moving party.'"[4]

## A

We address Salis' Jones Act claim first.  The Jones Act provides a cause of action for seamen injured in the course of their employment.[5]  Here Salis asserts a negligence claim against L&M.  In reviewing such a claim, we have previously stated that while the plaintiff's burden of proving negligence is "light," a shipboard injury nonetheless "does not presuppose negligence."[6] Therefore, to survive summary judgment Salis must demonstrate a genuine issue of material fact on which a reasonable jury could find that he surmounted this light, though real, burden.

Although Salis' brief cites to authority for the proposition that negligence is a viable claim under the Jones Act, he fails to offer any explanation of how the particular facts of the instant case demonstrate negligence.  We have previously held that an employer's standard of care in a Jones Act action is "ordinary prudence under the circumstances."[7]  Salis theorizes on appeal that L&M negligently failed to train him in "the safe methods of transporting water" into the galley—and makes no claim in this section of the appeal with respect to the grocery injury.  As evidence, he notes that it would have been "safer" to pass the water through the hatch to another crewman.  He speculates that this "could have prevented" his injury.

---

[4] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009) (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).

[5] 46 U.S.C. § 30104.

[6] *Marvin v. Cent. Gulf Lines, Inc.*, 554 F.2d 1295, 1299 (5th Cir. 1977).

[7] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997) (en banc).

No. 10-30068

This is insufficient to demonstrate negligence. The mere fact of an injury does not imply negligence.[8] The testimony in the record from the ship's captain indicates that he could not recall another individual injuring himself in such a manner or reporting such an injury. The bare existence of another transportation method by which Salis' particular injury might not have occurred, with no additional citations or legal arguments, cannot demonstrate a lack of "ordinary prudence"[9] by L&M in allowing crewmen to transport the goods in that manner. Thus, Salis has failed to offer sufficient evidence to demonstrate a genuine issue of material fact on his negligence claim, and summary judgment is appropriate.

In the alternative, we note that the deficiencies of Salis' brief constitute waiver of the negligence claim. As in the instant case, we have previously held that a mere conclusory assertion unsupported by legal or factual analysis constitutes waiver of an issue on appeal.[10]

**B**

We now address Salis' claim for continuing maintenance and cure. In *Vaughan v. Atkinson*, the Supreme Court offered a succinct explanation of maintenance and cure: "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service."[11] The doctrine is liberally construed.[12] Maintenance encompasses the seaman's living expenses, while cure involves payment of medical or therapeutic

---

[8] *Marvin*, 554 F.2d at 1299.

[9] *See Gautreaux*, 107 F.3d at 338.

[10] *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 183 n.24 (5th Cir. 2003).

[11] 369 U.S. 527, 531 (1962).

[12] *Id.* at 531-32.

treatment.[13]  A seaman's burden in proving these expenses is "'feather light.'"[14] Lastly, the Court has held that maintenance and cure continue until the seaman reaches "maximum medical recovery."[15]  We have previously stated that this occurs "when it appears probable that further treatment will result in no *betterment* of the seaman's condition."[16]  Such a determination is a factual medical matter.[17]

The district court's order only terminated these obligations at the present moment, but specifically added that it was not taking a position on maintenance and cure obligations should Salis seek surgery.  Thus, Salis must logically be seeking a restoration of his maintenance benefits along with a right to cure until he either has the surgery or decides against it.

Maintenance and cure are not without limits.  Maintenance is designed to provide financial assistance to a seaman who cannot work.  Therefore, it is unsurprising that the parties focus heavily on Salis' return to work.  The mere fact that Salis returned to work, however, is not dispositive.  Indeed, the Supreme Court has held that it would defeat the doctrine's purpose if a seaman's right to maintenance was terminated by an economically motivated return to work as a taxicab driver.[18]  In fact, we have held this is so even with respect to

---

[13] *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979) (citing *Farrell v. United States*, 336 U.S. 511 (1949)).

[14] *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 588 (5th Cir. 2001) (quoting *Yelverton v. Mobile Labs., Inc.*, 782 F.2d 555, 558 (5th Cir. 1986)).

[15] *Vaughan*, 369 U.S. at 531.

[16] *Pelotto*, 604 F.2d at 400 (citing *Farrell*, 336 U.S. 511).

[17] *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987).

[18] *Vaughan*, 369 U.S. at 533.

No. 10-30068

a return to a seaman's work.[19]  Yet where we observed that a seaman was fit enough to return to work, but by his own volition had chosen to work for others, we held the right to maintenance terminated.[20]

Instead, reaching maximum medical recovery is dispositive for maintenance and cure claims.[21]  The instant parties do not dispute that Salis had no pain or symptoms at the time he returned to work.  Carr cleared Salis for a return to work with "zero" restrictions, particularly relevant since in her initial notes she stated that she would do so only if Salis were symptom free. Reinforcing the conclusion that Salis had been cured, his physical therapist noted that Salis reported "100% functional improvement and 0/10 pain on the visual analog scale."  Though in some cases "maximum medical recovery" can be difficult to pinpoint,[22] having no pain or symptoms and 100% functional improvement qualifies.  Thus, at the time Salis returned to work he had no right to maintenance or cure.

It is nonetheless possible that Salis could have become reinjured while working, and thus with further recovery possible he would be eligible for maintenance and cure.  Indeed, Salis now states that his pain has returned, and that he is considering surgery.  Yet he has not seen a doctor for his injury since February 2009.  Moreover, Salis readily admits in his brief that he "is not entitled to maintenance for the days during which he was compensated for duty as a deckhand."  There is no dispute that Salis worked his tours until his license was suspended.  In other words, Salis concedes that he had no right to maintenance until his license was suspended by the Coast Guard.  Indeed, he

---

[19] *Lirette v. K & B Boat Rentals, Inc.*, 579 F.2d 968, 969 (5th Cir. 1978).

[20] *Dowdle v. Offshore Exp., Inc.*, 809 F.2d 259, 266 (5th Cir. 1987).

[21] *Vaughan*, 369 U.S. at 531.

[22] *See Dowdle*, 809 F.2d at 266.

indicated he would still be at L&M if he had a license.  Thus, Salis did not reacquire a right to maintenance merely because the Coast Guard suspended his licence.  Therefore, maintenance was properly terminated.

Similarly, the suspension by the Coast Guard did not create a new right to cure.  Of course, the district court's order explicitly did not address whether Salis would have a renewed right should he undergo the considered surgery. We do not address it either.  Salis does not, however, have a right to maintenance while he continues to weigh his options with regard to the surgery.

*       *       *

Finding the district court's grant of summary judgment proper, we AFFIRM.