**Carl M. WILLIAMS, Plaintiff-Appellee Cross-Appellant,**

v.

**READING & BATES DRILLING CO., and Aetna Casualty and Surety Company, Defendants-Appellants Cross-Appellees.**

No. 84–3210
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1985.

McGlinchey, Stafford, Mintz, Cellini & Lang, Donald J. Anzelmo, New Orleans, La., for defendants-appellants.

Bruscato, Loomis, Deal & Street, Anthony J. Bruscato, Monroe, La., for plaintiff-appellee.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Carl M. Williams brought this action pursuant to the Jones Act, 46 U.S.C. § 688, and general maritime law, seeking to recover damages for dyshidrosis, a skin disease, allegedly caused by an earlier accident in which Williams injured his right foot. The district court awarded Williams $218,000 for pain and suffering and past and future economic losses, with interest from the date of judicial demand. The defendants, Reading & Bates Drilling Co. (Reading & Bates), and its insurer, Aetna Casualty and Surety Company (Aetna) have appealed, contending that the district court erroneously found that the first injury was the cause of the dermatitis, that the district court erroneously included the value of fringe benefits in computing economic loss since the value of such benefits was not proved by Williams, that the district court erroneously awarded prejudgment interest,

and that the district court erred by refusing to require Williams to return to his former employment. On cross-appeal, Williams argues that the quantum of damages is not sufficient. After carefully reviewing the various arguments of the parties, we affirm the district court in all of its findings and holdings except for its award of prejudgment interest.

## I.

Williams was employed by Reading & Bates as a roustabout aboard the tender vessel N.J. GILBOW. His "work hitch" required that he work twelve-hour shifts for seven consecutive days followed by seven days shore leave. The accident in question occurred when Williams and his co-employees were attempting to transport two fifty-five-gallon barrels of cleaning fluid from the tender vessel to the rig floor. During the task, the metal basket used to transport the barrels struck Williams on the right foot, and fractured his right heel bone.

Following the accident, Williams was treated by an orthopedic specialist. His right foot was placed in a slipper cast from July 3 to July 31, 1980, when the cast was removed. He returned to his previous position on August 5, 1980.

Williams testified that during his first work hitch after the accident his skin problem developed. The condition would improve during each seven-day shore leave, but gradually deteriorated during each work hitch to the point that he saw a dermatologist on October 23, 1980. From that date until August of 1982, when Williams terminated his employment with Reading & Bates, he continued to see a dermatologist for his foot condition.

Upon terminating his employment, Williams sued Reading & Bates and its insurer, Aetna. Reading & Bates did not contest its negligence in the accident which injured Williams' right foot, but rather defended the lawsuit on the theory that the first accident was not the legal cause of the dyshidrosis. The district court found in Williams' favor, and awarded him $50,000

for past pain and suffering; $33,000 for loss of earnings, including fringe benefits; $135,000 for loss of future earnings, including fringe benefits. It is from this judgment that Reading & Bates and Aetna appeal.

## II.

### A.

#### (1)

The appellants' first argument is that the district court's factual determination that the first injury was the legal cause of the skin problem is clearly erroneous, since it is not in conformity with the testimony of the medical experts. It is well established that on appeal the findings of the district court shall not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a); *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Musial v. A & A Boats, Inc.*, 696 F.2d 1149 (5th Cir.1983).

The district court's determination that the injury to Williams' right foot was the cause of dyshidrosis was based on several factors. First, the dyshidrosis initially appeared during the work hitch immediately following the accident. Second, the condition of the right foot was more severe, and involved ninety percent more dermatitis than the left foot. Finally, contrary to the appellants' argument, the treating physician testified that the dermatitis condition was caused either by the injury to the foot, or by the cast that was placed on it. After carefully reviewing this evidence and other relevant evidence in the record, including all of the expert testimony, we do not find that the district court's determination of causation is clearly erroneous.

### (2)

■ The appellants' next argument is that the evidence introduced at trial in support of the value of fringe benefits was not sufficient to carry Williams' burden of proof. The appellants do not argue that fringe benefits are not a part of an employee's compensation. *See Petition of U.S. Steel Corp.*, 436 F.2d 1256, 1272 (6th Cir. 1970). Rather, they argue that the economic cost of the fringe benefits was not established by competent evidence since it was based solely on the Reading & Bates "Benefits Statement." According to Reading & Bates and Aetna, the "Benefits Statement" reflects the cost of providing the benefits rather than their value to the employee. While Williams' proof of the value of the fringe benefits could have been more thoroughly and professionally presented, we do not find that the district court's determination that the fringe benefits constitute additional compensation in excess of Williams' monetary remuneration is clearly erroneous. We are especially influenced here by the fact that this case was tried to the court, and not a jury. We are convinced that the court had a clear comprehension of the economic considerations involved; a jury might not so clearly comprehend them. Furthermore, we note that the district court awarded Williams less than the cost value indicated in the Benefits Statement.

### (3)

■ The appellants' third argument is that the district court should have required Williams to mitigate his damages by attempting to return to his former employment. The district court did not require Williams to return to his former occupation because expert testimony revealed that there was a high probability that the dermatitis would recur if Williams did so. Upon any recurrence, the treatment required, *inter alia,* that Williams received systemic steroid injections. His doctor testified that steroid injections produce adverse side effects such as hypertension, ulceration of the stomach, and thinning of the bones. The traditional rule is, of course, that an injured party must mitigate damages. This rule, however, is not without exceptions. For example, we do not require a party to undergo an operation if it will not result in full recovery and permit the injured party to return to that former position. *Verrett v. McDonough Marine Service,* 705 F.2d 1437 (5th Cir.1983); *Muller v. Lykes Bros. Steamship Co.,* 337 F.Supp. 700 (E.D.La.1972). Given the very serious, even critical, adverse side effects of steroid treatment necessary to control the disease upon recurrence, and the high probability that the condition would recur if he resumed his work as a roustabout, we do not find that the district court's failure to require Williams to return to his former occupation is reversible error. We specifically note that our holding here is necessarily limited to the record evidence in this case.

### (4)

■ Finally, the appellants argue that the award of prejudgment interest to Williams was improper. Williams initiated his claim under both the Jones Act and general maritime law. Prior to trial, the parties stipulated that the accident was caused by the *negligence* of Reading & Bates. In awarding prejudgment interest, the district court specifically found that the tender vessel was unseaworthy and stated that the pretrial stipulation of negligence did not preclude this conclusion. The appellants argue that there was no evidence upon which the court could have found that the vessel was unseaworthy, and without a finding of unseaworthiness, it was improper for the district court to award prejudgment interest. We agree with Reading & Bates that since negligence was stipulated, the only issue the parties tried was causation between the injury to Williams' foot and his skin condition; the question of seaworthiness of the vessel was not at issue, and was not tried. We must determine, therefore, whether it was within the discretion of the district court to award interest when liability rests only under Jones Act negligence principles.

■ While it is well settled that in an action at law under the Jones Act, the recovery of prejudgment interest is not permitted, *Theriot v. J. Ray McDermott & Co.*, 742 F.2d 877 (5th Cir.1984); *Wyatt v. Penrod Drilling Co.*, 735 F.2d 951 (5th Cir.1984); *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972), the same rule does not apply to Jones Act cases brought under the court's admiralty jurisdiction. In *Sanford Bros. Boats, Inc. v. Vidrine*, 412 F.2d 958 (5th Cir.1969), this court stated in dicta that the allowance of prejudgment interest in a Jones Act case tried in admiralty was within the discretion of the trial court. This rule was reiterated in *Domangue v. Penrod Drilling Co.*, 748 F.2d 999 (5th Cir. 1984); however, that statement was dicta since the case was actually brought on the law side of the court's jurisdiction. Our research reveals no personal injury action brought only pursuant to the Jones Act under the court's admiralty jurisdiction where the rule was not merely dicta to the court's holding. We believe, however, that *Sanford Bros.* and *Domangue* reflect the correct principle of law which should be applied here. This conclusion is further buttressed by the fact that prejudgment interest is awarded in Jones Act wrongful-death actions brought in admiralty. *Williamson v. Western Pacific Dredging Corp.*, 441 F.2d 65 (9th Cir.1971), *cert. denied*, 404 U.S. 851, 92 S.Ct. 90, 30 L.Ed.2d 91; *see Doucet v. Willis Drilling Co.*, 467 F.2d 336 (5th Cir.1972). We hold, therefore, that when a Jones Act claim is brought under the court's admiralty jurisdiction, and hence the case is tried to the court and not to the jury, the allowance of prejudgment interest is within the discretion of the trial court even if there is not a finding of unseaworthiness.

■ The district court awarded interest on the entire award. Prejudgment interest, however, may not be awarded with respect to future damages. *Wyatt v. Penrod Drilling*, 735 F.2d at 956 n. 4. We therefore remand this issue to the court to recalculate prejudgment interest in order that it properly exclude future damages.

## B.

■ On cross-appeal, Williams argues that the district court erroneously calculated his future economic loss at $135,000. Two economists testified at trial. Williams' expert economist calculated the total future loss to be $319,296. This computation was based on an assumed growth rate in future wages of 7.5% and a 4% inflation rate, discounted to its current value. Reading & Bates' expert testified that the future economic loss to Williams was $91,642. This amount excluded the value of fringe benefits, assumed a growth rate for wages of 3% attributable to noninflationary factors and then was discounted. Additional facts produced at trial indicate that Williams admitted that he did not wish to work on the drill floor as a floorhand for Reading & Bates, a move that would have been necessary in order to be considered for a promotion. The evidence also indicated that Williams is currently employed at a minimum wage rate.

Williams argues that a 3% growth rate does not adequately reflect the noninflationary growth rate of wages, and that the defendant's economist used an excessive discount rate. This court determined the proper method of computing economic loss in *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir.1983) (en banc) (*Culver II*). There we stated that the below-market discount method was the correct method for computing the effect of inflation and the discount rate. This approach does not allow for consideration of inflationary factors when calculating a plaintiff's lost future earnings. Instead, the trier of fact estimates the wage increases the plaintiff would have received each year as a result of individual and societal factors excluding price inflation. The resulting income is then discounted by a below-market discount rate.

While it is true that the task of reviewing the adequacy of the award is made more difficult in this case because the district court did not provide us with detailed calculations of how it derived Williams' fu-

ture economic loss of $135,000, we are convinced that the district court was aware of and properly considered the facts enunciated in *Culver II*. Our conclusion is supported by a review of the testimony of the economists at trial, the questions of the court to them, and the fact that the court's award is within the bounds estimated by the experts. It also appears that Williams' expert improperly considered inflation in determining future lost wages before applying the appropriate discount rate. After carefully evaluating all relevant factors, we find that the district court's determination of lost future wages is not clearly erroneous.

### III.

The district court is affirmed on all matters raised on appeal except for the calculation of prejudgment interest. We remand the case on that issue in order that the district court can compute the prejudgment interest to exclude such an award on the amount for future damages.

AFFIRMED IN PART, REMANDED IN PART.