Lonnie PICKLE, Plaintiff-Appellee,

Maryland Casualty Company,
Intervenor-Appellee,

v.

INTERNATIONAL OILFIELD DIVERS,
INC., Defendant-Appellant.

No. 84–4348.

United States Court of Appeals,
Fifth Circuit.

June 16, 1986.

Rehearing and Rehearing En Banc
Denied July 30, 1986.

Craig W. Marks, Owen M. Goudelocke, John A. Jeansonne, Jr., Lafayette, La., Joel L. Borrello, Adams & Reese, Lynn M. Luker, New Orleans, La., for Intern. & Intervenors (Fisher and Jennings).

Lawrence K. Burleigh, Ltd., Morgan City, La., Culotta & Morella, Charles Carmelo Culotta, Jr., Patterson, La., for plaintiff-appellee.

Edward J. Marquet, John K. Hill, Jr., Lafayette, La., for Maryland Cas. Co.

Before GARZA, POLITZ, and HILL, Circuit Judges.

POLITZ, Circuit Judge:

This is an appeal from a Jones Act judgment after a bench trial, and involves, *inter alia,* the application of the rule recently announced in *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067 (5th Cir.1986) (*en banc*). Finding no merit in the challenges mounted against the district court's findings on seaman status, defendant's negligence, and plaintiff's contributory negligence, we affirm on those issues. We vacate the judgment as cast, however, and remand for a reconsideration of the award of prejudgment interest and for consideration, as the court may find appropriate, of the contentions of intervenor Underwriters of Lloyd's of London (Underwriters) concerning the structuring of the mandated reimbursements to Maryland Casualty Company and International Oilfield Divers (IOD), and of the other issues discussed herein.

*Background*

Lonnie Pickle, an experienced diver, was employed by IOD and was lead diver of a crew constructing an underwater brace on a fixed platform owned by ETPM–U.S.A., Inc. (ETPM) in the Gulf of Mexico off the coast of Texas. Because Pickle had to interrupt the hitch to attend a funeral, Jim Connell became lead diver for the remainder of the work assignment. The IOD crew was stationed on ETPM Barge 701 for the duration of the job.

While making his second dive on January 29, 1978, Pickle injured his back when a surge of water threw him against the jacket leg of the platform. The seas were rough, with six-to-eight foot swells, and Pickle had experienced some difficulty on his first dive that day.

Invoking the Jones Act, 46 U.S.C. § 688, and the general maritime law, Pickle sued IOD and ETPM for damages for personal injury and maintenance and cure.[1] The trial court found that Pickle was a seaman because of his assignment to ETPM Barge 701 at the time of the accident and because 90% of his work for IOD during his three years of employment had been aboard vessels in the Gulf of Mexico. The trial court found IOD negligent because its supervisor, Connell, had failed to stop the diving during heavy seas, and it found that Pickle had not been contributorily negligent. Damages of $494,713.37 plus pre- and postjudgment interest were awarded.

In structuring the award, the court awarded Maryland Casualty, IOD's primary insurer, reimbursement totaling $29,354.19 and also allowed IOD $26,000 for

---

1. The claim against ETPM was dismissed.

sums previously paid on Pickle's behalf.[2] These sums were deducted from Pickle's award. IOD appeals.

After the appeal was noticed, Underwriters petitioned this court for leave to intervene, explaining that they provided employer's liability insurance to IOD for all sums in excess of the $25,000 primary coverage of Maryland Casualty. Because Maryland Casualty did not appeal, and recognizing the obvious vital interest of Underwriters, we granted their petition to intervene.

### Analysis

*Seaman status.*

■ IOD first challenges the district court's finding that Pickle was a Jones Act seaman, a finding which will not be disturbed unless it is shown to be clearly erroneous. *Yelverton v. Mobile Laboratories, Inc.,* 782 F.2d 555 (5th Cir.1986).

In *Barrett,* the *en banc* court revisited *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959), and reviewed the test for seaman status articulated there. A unanimous court reaffirmed the two-part *Robison* test which categorizes a maritime worker as a Jones Act seaman if he (1) "was assigned permanently to a vessel or performed a substantial part of his work on the vessel," and (2) "contributed to the function of the vessel or to the accomplishment of its mission." *Barrett,* 781 F.2d at 1072. Recognizing that the second prong of the test is easily determined under the Supreme Court's broad definition of "aid to navigation," *id.,* we focused primarily on refining the first prong of the *Robison* test. To this end, we directed our attention to the duration of an employee's assignment to a vessel or fleet of vessels, to the definition of a fleet, and to the question of substantial performance.

Noting that the permanent-assignment/substantial-performance test is in the disjunctive, the *Barrett* court cited *Davis v. Hill Engineering, Inc.,* 549 F.2d 314 (5th Cir.1977), for the proposition that "a worker [may qualify as] a crew member if he does substantial work on the vessel even though his assignment to it is not 'permanent.'" 781 F.2d at 1073. Citing a number of this circuit's precedents, the *en banc* court continued by observing that

> in order to prove "substantial work" equivalent to permanent assignment "it must be shown that [the claimant] performed a significant part of his work aboard the vessel with at least some degree of regularity and continuity[,]" [which] "evinc[ed] a vessel relationship that is substantial in point and time and not merely spasmodic." "[This reflects] 'more than a transitory connection' with a vessel or a specific group of vessels...."
>
> [All of which], like the status determination as a whole, is an inherently factual question....

*Id.* at 1073–74 (citations and footnotes omitted). We completed the definitional process by stating: "By fleet we mean an identifiable group of vessels acting together or under one control." *Id.* at 1074.

The *Barrett* court then examined the facts before it and found that during the year or so Barrett had worked for his employer, 20-to-30% of his work was aboard vessels, although during the eight-day period immediately preceding the injury he had spent as much as 70% of his time aboard a vessel. The majority of the court took the longer view and looked to Barrett's entire period of employment in determining his status as a crew member. From that perspective, because Barrett spent 70-to-80% of his work-time aboard fixed platforms, he was not "a member of the crew of a vessel" inasmuch as "he did not perform a substantial portion of his work aboard a vessel or fleet of vessels." *Id.* at 1076.

**2.** On appeal Maryland Casualty moved to supplement the record to show that it had actually expended $31,919.52 for Pickle. We granted the motion to supplement but deferred deciding whether the additional proof would be used in the resolution of any issue on appeal. Since we are remanding, we leave to the discretion of the district court whether the judgment should be amended, with or without the taking of further evidence, relative to this claim of Maryland Casualty, for the reasons discussed *infra.*

The trial court found that Pickle spent 90% of his work-time during his employment with IOD aboard an identifiable fleet of barges. In addition, as "a commercial diver, who embodies the traditional and inevitably maritime task of navigation, [Pickle had] the legal protections of a seaman when a substantial part of his duties are performed on vessels." *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 436 (5th Cir.1984). This is so because "[i]t is the inherently maritime nature of the tasks performed and perils faced by his profession, and not the fortuity of his tenure on the vessel from which he makes a particular dive on which he was injured, that makes [Pickle] a seaman." *Id.* We perceive no erroneous fact-finding and no error of law in the trial court's determination that Pickle was a seaman.

*Negligence and contributory negligence.*

Without conceding but, understandably, without vigorously challenging the finding that it was negligent, IOD contends that the district court erred in finding no contributory negligence on Pickle's part. IOD argues that as an experienced diver, Pickle should have been more careful by refusing Connell's directions to dive. The court's findings on this point will not be overturned unless clearly erroneous. *Kratzer v. Capital Marine Supply, Inc.*, 645 F.2d 477 (5th Cir.1981).

 As a Jones Act employer, IOD must bear responsibility for Connell's negligence "if such negligence played any part, *even the slightest*, in producing the injury." *Theriot v. J. Ray McDermott & Co.*, 742 F.2d 877, 881 (5th Cir.1984) (emphasis in original). In light of the fact that Pickle's duty to protect himself is only a slight duty to use reasonable care, *Bobb v. Modern Products, Inc.*, 648 F.2d 1051 (5th Cir. 1981), we find no error in the district court's findings and conclusions.

*Excessive award.*

1. Future wages

 IOD maintains that the trial judge overestimated Pickle's lost future wages by ignoring the possibility that he might be employed at a pay scale in excess of the federal minimum wage and by failing to credit properly a medical report indicating that because of pulmonary disease not related to the accident, Pickle's future as a diver was limited. Recognizing that an employee's work-life expectancy may be affected by evidence of his poor health, *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475 (5th Cir.1984), the district court found that Pickle would have been employed by IOD as a diving supervisor when his diving career ended. This finding, based on testimony by IOD's president, is not clearly erroneous. It was therefore not an abuse of discretion, *see Curry v. Fluor Drilling Services*, 715 F.2d 893 (5th Cir.1983), for the court to ignore the evidence of Pickle's pulmonary condition, which would not have affected his career as a diving supervisor. Insofar as IOD challenges the award for failure to consider employment above the minimum wage, this finding is not shown to be clearly erroneous. The evidence of such employability was random and speculative.[3]

2. Prejudgment interest

 IOD next contends that the district court erred in awarding prejudgment interest without first finding that IOD was responsible for any delay. This claim is devoid of merit. An award of prejudgment interest in an admiralty case is within the district court's sound discretion, *e.g., Williams v. Reading & Bates Drilling Co.*, 750 F.2d 487 (5th Cir.1985); *Curry v. Fluor Drilling*, and does not depend on evidence of delay. "In fact, generally in maritime law, prejudgment interest should be awarded." *Curry v. Fluor Drilling*, 715 F.2d at 896 (citations omitted). *See also Ceja v. Mike Hooks, Inc.*, 690 F.2d

---

3. The testimony concerning Pickle's potential employment as a diving supervisor at a rate far in excess of the minimum wage is not relevant to this contention of IOD's, for it was conceded that due to his back injury, Pickle was ineligible for this supervisory job.

1191, 1196 (5th Cir.1982) ("As a general rule, prejudgment interest should be awarded in admiralty cases—not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled."). The district judge found no "peculiar circumstances" that would make it inequitable to assess prejudgment interest, thereby accurately tracking the law of the circuit, *see Doucet v. Wheless Drilling Co.*, 467 F.2d 336, 340 (5th Cir.1972). We find no abuse of discretion in the award of prejudgment interest on damages for all losses that occurred prior to trial.

■ IOD further maintains that the court erred by awarding prejudgment interest on damages for loss of future income and for future pain and suffering. That challenge is meritorious as it relates to the interest on damages for future pain and suffering. Agreeing with IOD's argument on this point, we must vacate so much of the judgment as is necessary to empower the district court on remand to reconsider the award of prejudgment interest on post-judgment losses.[4]

Claiming that this is a question of first impression, Pickle argues that the general rule prohibiting prejudgment interest on post-judgment losses should be modified in order to allow such interest where future losses have been discounted to present value. We note first that this is not a question of first impression for us. As the *Williams* court categorically declared, "Prejudgment interest ... may not be awarded with respect to future damages." *Williams*, 750 F.2d at 491. Moreover, Pickle's argument ignores the basic rationale for denying interest on post-judgment losses: a victorious plaintiff has not suffered any delay in payment of those items, whether they have been discounted to present value or not, and hence there should be no prejudgment interest allowed on them. *See generally Wyatt v. Penrod Drilling Co.*, 735 F.2d 951 (5th Cir.1984); *Hamilton v. Canal Barge Co.*, 395 F.Supp.

978 (E.D.La.1975) (Rubin, J.).[5] We therefore vacate that part of the judgment and remand this question to the court *a quo* for a recalculation of prejudgment interest, excluding therefrom interest on future, unaccrued non-economic damages.

*Failure to deduct social security taxes.*

■ Finally, IOD correctly argues that the district court erred in not deducting social security taxes from its estimate of Pickle's future income. This point, however, was not made by formal objection, or by questioning during IOD's rigorous and thorough cross-examination of Pickle's expert economist, or after trial by a Fed.R. Civ.P. 59 motion, and thus has not been preserved for appeal. *See Madore v. Ingram Tank Ships, Inc.*

*Structuring of judgment and reimbursements.*

In addressing this troublesome issue, we first note that Pickle has not filed a cross-appeal contesting the judgment's structure or the reimbursals ordered. He merely argues in his reply brief that the $26,000 reimbursement to IOD and $13,097.60 of the reimbursement to Maryland Casualty represented maintenance and should not be credited, off-set, or reimbursed. The arguments before us concerning reimbursement are those of Underwriters, the intervenors-on-appeal.

Underwriters argues that the judgment will reimburse Maryland Casualty for money it was contractually obligated to pay, thereby making Underwriters liable for a primary amount even though it is only the excess insurer. Maryland Casualty candidly concedes that it should not have been reimbursed for amounts paid Pickle up to its policy limits of $25,000, but apparently would restrict its claim for reimbursement to the sum of $6,919.52, the amount assertedly paid in excess of those limits. Maryland Casualty's claim is based on evidence presented only to this court. We may not and do not consider it. *See Scarborough v.*

---

4. Although the portion of the judgment for lost future income and benefits is clearly identifiable, remand is necessary in order to allow the district court to determine how much of the general award for pain and suffering represents a post-judgment recovery.

5. In so stating we underscore, however, that as to economic losses this dispute is to be resolved pursuant to the rule of *Culver I,* 688 F.2d 280 (5th Cir.1982) *(en banc)*. *Culver II,* 722 F.2d 114 (5th Cir.1983) *(en banc)*, applies only to cases decided thereafter.

*Kellum,* 525 F.2d 931 (5th Cir.1976); *Smith v. United States,* 343 F.2d 539 (5th Cir.), *cert. denied,* 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965). Maryland Casualty may not increase the reimbursal amount *ex parte* on appeal. *See supra,* n. 2. But its concession that it should not have been reimbursed for its policy limits is laudatory and appropriate, and we perceive no just reason for completely extinguishing its reimbursal award, provided the claim of Underwriters receives appropriate consideration on remand.

 Underwriters' motion to intervene on appeal consists, essentially, of a claim that because of the structuring and phrasing of the reimbursal judgment, it should be considered a necessary and indispensible party under Fed.R.Civ.P. 19(a) & (b). Although the original defendants failed to present this defense to the trial court, their failure does not prevent our considering it on appeal, *United States v. Sabine Shell, Inc.,* 674 F.2d 480 (5th Cir.1982); *McCulloch v. Glasgow,* 620 F.2d 47 (5th Cir.1980), especially when prior to the enunciation of the judgment, Underwriters had no reason to believe that the disposition of this suit would "impair or impede" their ability to protect their interests. Fed.R.Civ.P. 19(a)(2)(i). Moreover, a Rule 19 objection can even be noticed on appeal by the reviewing court *sua sponte. Provident Trademens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Kimball v. Florida Bar,* 537 F.2d 1305 (5th Cir.1976).

Although we today recognize the existence of this joinder issue, we do not find it fit for resolution at this juncture:

We could not resolve this issue without additional briefs examining each of the factors enumerated in Rule 19, and we would have to remand in any case if we held for [intervenor] on this issue. Therefore, we think it appropriate to remand in the first instance so that ... the district court can determine whether the [intervenor] can or should have been joined under the provisions of Rule 19.

*Kimball,* 537 F.2d at 1307. These same considerations mandate that we vacate that part of the judgment concerning reimbursals to Maryland Casualty and remand for a reconsideration of that issue, and for consideration of the claims of Underwriters, including the threshold question whether they should now be allowed an opportunity to present their claims.

For his part, Pickle contends that $13,097.60 of the sum paid him by Maryland Casualty represented maintenance and should not have been reimbursed. Because there has been no cross-appeal, that contention is not properly before us. We therefore do not address Pickle's argument that the $26,000 received from IOD was for maintenance and should not have been the subject of reimbursement.[6]

For these reasons, we conclude that the prevailing law and the interests of justice and judicial economy require that we vacate parts of the judgment and remand this matter to the trial court for further proceedings consistent herewith.

**6.** Implicit in the trial court's structuring of the judgment is adherence to the rule that double recovery is to be avoided. There may be some portions of the sums reimbursed to Maryland Casualty and IOD, however, which represented maintenance independent of lost past wages or other damages. Although the complaint and opinion refer to maintenance and cure, part of the award was for past fringe benefits (meals aboard ship) and part was for future fringe benefits of that kind. While payments for meals before maximum cure has been achieved can often be regarded as part of maintenance, any award for loss of future fringe benefits after maximum cure has been achieved, and the duty to pay maintenance has therefore ended, can only constitute the oft-overlooked award in admiralty for "found." *See generally,* Normann, *Has Found Been Lost? An Analysis of a Seldom Utilized Concept in the Maritime Law,* 30 Loy.L. Rev. 875, 877 (1984) ("Pursuant to present case law, the plaintiff injured [while in the service of the ship] would recover maintenance through the date his physician declared his disability to be permanent, and at that point his claim for found may become viable. Hence, the prevailing view is that he may not recover maintenance and found for the same period, but once maintenance terminates he may be entitled to found. In this sense, the recoveries are mutually exclusive, but only within the same time frame.").

AFFIRMED IN PART, VACATED, IN PART AND REMANDED.