John BOYLE, Plaintiff–Appellee,
Cross–Appellant,

v.

POOL OFFSHORE COMPANY, A DIVI-
SION OF ENSERCH CORPORATION,
Employers National Insurance Compa-
ny & Seahorse Marine, Inc. (a/k/a
Seahorse, Inc.), Defendants–Appellants,
Cross–Appellee.

No. 88–3924.

United States Court of Appeals,
Fifth Circuit.

Feb. 5, 1990.

Rehearing Denied March 15, 1990.

Nathan Greenberg, David Greenberg, Greenberg & Dallam, Gretna, La., for plaintiff-appellee, cross-appellant.

Before GARZA, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case arises out of an accident aboard an offshore drilling rig. Appellee John Boyle was injured as he assisted in transferring a flexible, four inch mud hose back to a supply vessel.

Boyle sued Pool Offshore Co., the operator of the drilling rig and Seahorse, Inc., the operator of the supply vessel.[1] The case was tried before a jury which returned a verdict awarding Boyle $266,910.00 in damages. The jury calculated that Pool's negligence was 65% of the accident's cause, and that Seahorse's negligence was 35% to blame. The jury found that Boyle was not at fault. The district court granted judgment on the verdict, and Pool and Seahorse appeal.

## I. Facts and Prior Proceedings

The weather was severe on the night of December 29, 1983. There was conflicting testimony, but it is established the temperature was below freezing, the winds were strong, and the seas were rough. The supply vessel M/V TAMPA SEAHORSE moored itself to Pool Rig 54. Among other supplies, the TAMPA SEAHORSE had brought a load of drilling mud to the rig. In order to transfer the mud, it was necessary to lift a mud hose from the vessel onto the rig. To accomplish this task, the rig's crane operator, Travis McNeese, lowered the rig's crane cable onto the vessel. Although the crane cable included several components, for purposes of this case it is important to note only that the cable assembly terminated in a safety shackle. Crew members aboard the TAMPA SEAHORSE attached the end of the mud hose

W.K. Cristovich, Kevin R. Tully, Michael Cristovich, Christovich & Kearney, New Orleans, La., for Seahorse Marine, Inc.

Thomas J. Wagner, Michael H. Bagot, Jr., Wagner & Bagor, New Orleans, La., for Pool, etc. & Employers, etc.

1. Boyle also sued Mobil Oil Exploration and Producing Southeast, Inc., the company for which both Pool and Seahorse were working. A directed verdict absolved Mobil of liability, and it is not involved in this appeal.

to the safety shackle, and the mud hose was lifted aboard the rig. It was then lashed down at three locations so that it would not fall back onto the supply ship. The end of the hose was placed in the mud pit and the mud was pumped onto the rig.

After the mud transfer was completed, McNeese, the crane operator, directed Boyle to assist him in returning the mud hose to the supply vessel. McNeese took his station at the crane and lowered the shackle to Boyle. Boyle removed the hose from the pit, capped the hose end, and attached the hose to the shackle. At Boyle's signal, McNeese raised the hose a few feet. McNeese then removed the first tie-down. After the hose was raised some more, Boyle removed the second tie-down. Boyle then motioned McNeese to raise the hose again. Before Boyle could remove the third and final lashing, however, the hose fell a distance of at least 40 feet. Boyle was hit by the falling hose and was injured.

The dispute in this case centers around the method Boyle used to re-attach the hose to the crane cable shackle. Appellants Pool and Seahorse claim that when the mud hose came aboard the rig, it was "noosed," that the noose remained on the hose when it was in the pit, and that Boyle improperly re-attached the noose to the shackle. In the noosing procedure, a sling (a steel cable with loops or eyes affixed at either end) is wrapped around the hose. One end of the sling is then passed through the eye at the other end. When the free eye is hooked into the shackle, the noose, in effect a slip knot, draws tight around the hose and the hose can be lifted safely. Appellants suggest that Boyle must have attached the wrong sling eye to the shackle. Boyle, however, claims that the hose was not noosed. Boyle claims that when he removed the hose from the mud pit, one end of the sling was already tied to the hose with lightweight rope or cord. Boyle explains that when he re-attached the hose to the cable, he simply hooked the free end of the already attached sling to the shackle. Boyle suggests that when the hose was lifted the cord eventually failed, allowing the hose to fall.

After the accident, Pool's employees found a sling hanging from the shackle. Neither the shackle nor the sling had failed. The state of the sling after the accident is consistent with both appellants' and appellee's stories. No cord was found.

The mud hose struck Boyle on the head, back, and left side. In addition to temporary injuries, Boyle suffered a permanent injury to his lateral femoral cutaneous nerve. This injury produced a sensory problem known as meralgia paresthetica.

At the conclusion of the plaintiff's case, Pool and Seahorse filed motions for a directed verdict. These motions were denied. After the judgment was signed, appellants filed motions for judgment notwithstanding the verdict, for remittitur, and for a new trial. These motions also were denied. Appellants filed timely notices of appeal.

Appellants claim the district court erred in denying their motions for directed verdict, for judgment notwithstanding the verdict, for new trial, and for remittitur. Further, appellant Pool seeks indemnity from Seahorse. Appellant Seahorse claims it was error to award pre-judgment interest on the award for future pain and suffering. Finally, appellee Boyle seeks to impose joint liability on appellants.

## II. Motions for Directed Verdict and for Judgment Notwithstanding the Verdict

### A. Seahorse

The judgment against Seahorse was based on negligence under general maritime law. The standard of review of the district court's denial of Seahorse's motion for directed verdict and for judgment notwithstanding the verdict is the often-repeated standard announced by the Court in *Boeing v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc). We quote this standard at some length because this is a difficult and perhaps borderline case. In *Boeing*, we held:

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evi-

dence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable [persons] could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded [persons] in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Boeing v. Shipman*, 411 F.2d at 374–75. In the present case, therefore, we must decide whether the record contains "a conflict in substantial evidence."

Boyle testified that when he removed the hose from the mud pit, the sling was tied to the hose with a piece of cord. Boyle said that he simply attached the free end of the sling to the shackle. The sling was tied to the hose, Boyle asserted, because the noosing method can cause the hose to crimp and collapse.

Seahorse attempted to impeach Boyle's trial testimony by comparing Boyle's trial testimony with Boyle's prior deposition testimony. Though Boyle claimed at trial that the sling was tied to the hose with cotton cord, in his deposition, the following exchange occurred:

Q. How did you hook it onto the hose?

Boyle: With a piece of cable that was on the hose.

Q. How was the cable secured to the hose?

Boyle: I don't know.

Q. You attached a sling to the cable, did you not?

Boyle: Yes, sir.

Q. And you have no recollection of how the cable was attached?

Boyle: To the hose, no.

.    .    .    .    .

Q. As I understand it, you can't tell us how the cable was hooked to the hose or may have been secured to the hose, is that right?

Boyle: No sir, not for sure, I can't tell you.

The jury was fully apprised of the inconsistencies between Boyle's trial testimony and his deposition testimony through thorough questioning by counsel for appellants.

Boyle tried to de-fuse the effect of his apparently inconsistent statements by explaining that he remembered more details about the accident after the deposition. According to Boyle, he had not concentrated on details of the sling-to-hose attachment before the deposition. After the deposition, however, Boyle's attorney asked Boyle to diagram, in detail, the lifting apparatus. In so doing, Boyle explains, he remembered that the sling was tied to the hose with cord.

Boyle's expert witness, Donald Broussard, testified that he had seen cord used to lift mud hoses in similar situations. Broussard explained that soft line was used to avoid crimping the hose. Broussard also testified, however, that use of cord to lift a mud hose was unsafe.

Travis McNeese, the crane operator, testified that he did not know how the hose was attached. McNeese testified, however, that he had seen mud hoses lifted by soft line. McNeese also testified that when he was aware that soft line was being used, he would have it removed because it was unsafe.

Appellants produced two witnesses who claimed to have seen the mud hose come on board noosed with a sling. One of these witnesses was Merely Walker, a roustabout who lashed the hose down when it was brought aboard. Walker testified that he had never seen cord used to lift a mud hose. The other witness was Terrell Smith, the tool pusher who was in charge when the accident occurred. Smith testified that he had seen hoses lifted with rope, though the rope was much stronger than the rope Boyle claimed was used. Neither Smith nor Walker saw Boyle re-attach the hose. Also, neither Smith nor Walker saw the accident. Appellants also called an expert, Rudy Vorenkamp, who testified that cotton cord would never be used to lift anything on a ship.

■ Credibility is a question for the jury. *See Boeing v. Shipman*, 411 F.2d at 375 ("[I]t is the function of the jury ... to ... determine the credibility of witnesses."). We can not, therefore, dismiss Boyle's testimony simply because it was impeached to some extent. Instead, we consider the quantum of evidence that was presented, leaving credibility questions for the jury. Boyle claims the sling was attached with rope. Broussard and McNeese testified that they had seen this done before. On the other hand, Walker and Smith testified that the hose was noosed when it came on board. Smith testified that though rope might be used, it would be large, heavy rope. Finally, Vorenkamp testified that cord would never be used. It is clear from the record that each side presented substantial evidence in support of its explanation of the accident. The jury reasonably could have rendered its verdict either for appellee or appellants. Under these circumstances we will not take away from appellee his jury verdict. Consequently, we hold it was not error to deny Seahorse's motion for directed verdict and its motion for judgment notwithstanding the verdict.

## B. Pool

■ The judgment against Pool was founded, at least in part, on the Jones Act, 46 U.S.C. § 688. In a Jones Act case the showing required to overturn a jury verdict is even more stringent than in the case of a general negligence claim. A directed verdict or judgment notwithstanding the verdict may be granted only when there is a complete absence of probative facts supporting the non-movant's position. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir.1989). It is clear from the evidence recited above that there was not a complete absence of probative facts in support of Boyle's version of the story. It was not error, therefore, for the district court to deny Pool's motion for a directed verdict and motion for judgment notwithstanding the verdict.

## III. *Motions for New Trial*

Appellants argue that the district court erred in denying their motions for a new trial. Appellants list several grounds in support of this contention. We consider each individually.

### A. Sufficiency of the Evidence

Appellants claim they were entitled to a new trial because the jury verdict was "against the great weight of the evidence." "The decision to grant or deny a motion for new trial is, however, within the sound discretion of the trial court, and reversible only for abuse of that discretion." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir.1982). Our review is particularly limited when the trial court has denied a motion for new trial. *Id.* In considering whether the district judge abused his or her discretion, we must view the evidence in a light favorable to the jury verdict. *Williams v. Chevron U.S.A., Inc.*, 875 F.2d 501, 505 (5th Cir.1989). Ultimately, a district judge will be deemed to have abused his or her discretion if there is an "absolute absence of evidence to support the jury's verdict." *Irvan v. Frozen Food Express, Inc.*, 809 F.2d 1165, 1166 (5th Cir.1987) (*quoting Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769 (5th Cir. 1973)).

■ On the basis of the evidence reviewed in connection with appellants' motions for directed verdict and motions for

judgment notwithstanding the verdict, we conclude that there is not a complete absence of evidence to support the jury's verdict. To the contrary, as stated above, we have concluded above that substantial evidence supported both appellants' and appellee's cases. The district judge did not abuse his discretion and therefore did not err in denying appellant's motions for a new trial on the basis of the weight of the evidence.

### B. Expert Testimony

Appellants claim they were entitled to a new trial because the district court committed "prejudicial error" in admitting the testimony of Donald Broussard, appellee's expert witness. It is, of course, well-settled that "[t]he admission or exclusion of expert testimony is a matter left to the discretion of the trial judge and his or her discretion will not be disturbed on appeal unless it is manifestly erroneous." *Smogor v. Enke*, 874 F.2d 295, 297 (5th Cir.1989) (*quoting Perkins v. Volkswagen of America, Inc.*, 596 F.2d 681, 682 (5th Cir.1979)).

■ The record reveals that Broussard was admitted as an expert on the "limited aspect of mud hose operation." Before the district court accepted Broussard as an expert, Broussard testified that he had received formal training in crane operations and rigging techniques, that he had worked as a safety director for an offshore drilling contractor, and that he had worked as a rig supervisor. Most important, the district judge conducted his own thorough examination of the witness to lay the predicate for the admission of his testimony. Broussard was asked questions about his experience with mud transfer operations. Broussard responded that he had seen the mud hose transfer operation "many times," that he had been responsible for the safety of such operations, and that he made changes in the rigging being used. Our review of the record reveals that the district court's decision to admit Broussard's testimony as an expert witness was not manifest error.

Because it was not error to admit Broussard's testimony, it obviously was not error to deny appellants' motions for new trial based upon the admission of the testimony.

### C. Jury Deliberations

Appellants further assert that they should have been given a new trial because the approach of Hurricane Florence during the jury's deliberations rendered the trial "unfair." Appellants speculate that because the jurors were concerned about the approaching storm the jury cut short its deliberations in deciding the case.

■ It is fundamental that a court will not upset a jury verdict on the basis of speculation about what might have motivated the members of the jury. *Knight v. Texaco, Inc.*, 786 F.2d 1296, 1299, n. 2 (5th Cir.1986) (*citing Howard D. Jury, Inc. v. R & G Sloane Mfg. Co.*, 666 F.2d 1348, 1351 (10th Cir.1981)). Appellants, therefore, were not entitled to a new trial based on supposition that Hurricane Florence may have affected the deliberations. The district court did not err in denying appellants' motions for new trial on the basis of such conjecture.

### D. Excessive Damages

Finally, appellants claim they are entitled to a new trial because the jury awarded excessive damages to appellee. The district court's denial of the motions for new trial on this basis is reviewable only for abuse of discretion, and only where the verdict as to the damages is unsupported by the record. *Franks v. Associated Air Center, Inc.*, 663 F.2d 583, 590 (5th Cir. 1981). Our initial inquiry, therefore, is whether there is evidence in the record to support the verdict.

■ The jury awarded Boyle $266,910 in damages.[2] This total consisted of $71,000 for "past income loss" and $195,910 for "general suffering (pain and suffering,

---

**2.** By stipulation, the district court's judgment added $10,832 in medical expenses and allowed

Pool a credit of $25,936 for medical expenses, maintenance costs, and advances paid by Pool.

mental anguish, loss of life's pleasures, [and] disability)." [3]

The record reveals that appellee Boyle was struck on the head, arm, and side by a hose that fell from a height of at least 40 feet. He was knocked unconscious and was hospitalized for several days. Appellee suffered pain in his thigh that was treated with cortisone injections, but he continues to have pain in the thigh. The pain can be aggravated by prolonged activities such as prolonged walking, lifting, standing and the like. There was testimony that the pain is likely to be permanent. In addition to this pain, appellee has some loss of feeling in his thigh.

The record also contains evidence that appellee lost wages because of his injuries. Testimony revealed that Boyle lost $20,000 in wages in the first year after the accident and $46,891 in wages from the end of the first year until the time Boyle resumed work in another job.

In light of the evidence of Boyle's personal injuries and lost wages, we must conclude that the jury verdict awarding $266,910 in damages was supported by the record. Consequently, the district judge's denial of appellant's motions for new trial on damages was not an abuse of discretion.

### IV. Motions for Remittitur

Appellants filed motions for remittitur which the district court denied. Appellants complain that this denial was error. Again, we review the district judge's decision under an abuse of discretion standard. *Sam's Style Shop v. Cosmos Broadcasting Corp.*, 694 F.2d 998, 1006 (5th Cir.1982). We conclude that the district court did not err in denying appellants' motions for remittitur.

### V. Indemnity

Appellant Pool seeks indemnity from appellant Seahorse, claiming that the judgment against Pool arises solely from Seahorse's negligence and that Pool is "without fault." Pool's protestations of blamelessness, however, cannot be given credence in light of unambiguous jury findings that Pool was negligent and that Pool's Rig 54 was unseaworthy. The jury determined that Pool was 65% at fault for the accident. Pool's contention that Seahorse should indemnify Pool is meritless.

### VI. Prejudgment Interest

The district court first awarded prejudgment interest on the entire award against both appellants. Because Pool's liability was based on the Jones Act, the district court later and properly altered the judgment to impose only post-judgment interest against Pool. Seahorse, however, remained liable for prejudgment interest on Seahorse's share of the entire judgment. Seahorse complains that the award of prejudgment interest was error, because part of the judgment represents compensation for future pain and suffering.

Prejudgment interest may not be awarded on a judgment for future damages. *Williams v. Reading & Bates Drilling Co.*, 750 F.2d 487, 491 (5th Cir.1985). Neither the judgment nor the jury verdict expressly lists any future damages.[4] In its closing argument, Boyle asked the jury for $150,000 to compensate for his future pain and suffering. Because the award of prejudgment interest on the entire judgment may have included prejudgment interest on damages for future pain and suffering, we must vacate that portion of the judgment and remand this issue to the district court for a determination as to what proportion, if any, of the judgment represents future damages. *See Pickle v. International Oilfield Divers, Inc.*, 791 F.2d 1237, 1241 (5th Cir.1986), *cert. denied*, 479 U.S. 1059, 107

---

3. The allocation of damages by the jury was not totally consistent with Boyle's prayer. The $71,000 awarded for past income loss is greater than what Boyle requested ($66,910). On the other hand, the $195,910 for general suffering is less than the amount Boyle requested ($200,000).

Nonetheless, the total verdict ($226,910) equalled the total prayer ($266,910).

4. The jury verdict, however, lists items such as "disability" and "loss of life's pleasures" that may reasonably be presumed to include future damages.

S.Ct. 939, 93 L.Ed.2d 989 (1987); *Williams, supra,* 750 F.2d at 491.

## VII. *Medical Expenses, Maintenance Costs and Advances Paid*

The district court judgment allowed Pool a credit of $25,936 on the judgment for medical expenses, maintenance costs, and advances paid. Pool now concedes that this credit was $7,035 too high. Consequently, the part of the judgment awarding Pool a $25,936 credit is reformed to award an $18,901 credit to Pool.

## VIII. *Joint Liability*

█ The final issue before the Court is appellee Boyle's claim that the judgment should impose joint liability against Pool and Seahorse. Appellant Pool counters that Boyle did not raise this issue before the district court. The record reveals that in his post-judgment motion to fix interest and costs, appellee did not request the imposition of joint liability. Boyle's first post-judgment mention of joint liability was made in his notice of appeal to this Court. We conclude that Boyle waived this issue when he did not raise it before the district court.

## IX. *Conclusion*

The district court did not abuse its discretion in denying appellants' motions for directed verdict, for judgment notwithstanding the verdict, for new trial, or for remittitur. Appellant Pool is not entitled to indemnity from Seahorse. Because the judgment may have awarded prejudgment interest on an award for future pain and suffering, the prejudgment interest award is vacated and this issue is remanded to the district court for a determination of whether any of the damages awarded cover future damages. In addition, the judgment is reformed to reduce the credit to Pool from $25,936 to $18,901. Finally, we deny appellees claim for joint liability against appellants because this issue was waived when it was not raised before the district court.

AFFIRMED IN PART, VACATED IN PART, MODIFIED IN PART, AND REMANDED.